G. R. LUNDELIUS et al., Appellants,

v.

Philip H. THOMPSON, Jr., et ux., Appellees.

No. 11785.

Court of Civil Appeals of Texas, Austin.

Dec. 9, 1970.

Rehearing Denied Dec. 30, 1970.

Joe B. McMaster, Georgetown, for appellants.

McClain & Stump, W. K. McClain, Georgetown, for appellees.

HUGHES, Justice.

G. R. Lundelius and Jake Sandgarten, appellants, brought suit against Philip H. Thompson and wife, Jeanne A. Thompson to remove cloud from the title to 3.33 acres of land, sometimes referred to as 3.65 acres, out of the Charles Cochran League in Williamson County, Texas. Such cloud was alleged to have been created by the erection of a fence on this land by Mr. Thompson. Appellants alleged that Sandgarten is the owner of the land and that Lundelius owns a vendor's lien on the land. Appellants pleaded the acquisition of title by compliance with the five and ten year statutes of limitation. (Arts. 5509 and 5510, Vernon's Tex.Civ.St.).

Appellees, the conceded owners of the record title to the land in suit, pleaded an agreement of more than fifty years standing with reference to the construction and use of a fence which placed the land in suit within the enclosed lands of Sandgarten and his predecessors in title. They also sued for removal of cloud to this 3.33 acres created by recorded deeds purportedly conveying this land from Morris to Lundelius to Stubbs to Sandgarten. They filed a plea of not guilty and a cross action in trespass to try title.

The case was tried to a jury which found that the use of the land in suit by Lundelius and those under whom he claimed title was permissive use of the land by landowners on the north side of Brushy Creek prior to the deed to Lundelius dated June 12, 1959, and that title had not been acquired under either the five or ten year statutes of limitation by Lundelius or Mack Morris and Lundelius, respectively.

The Trial Court found in his judgment that there was no evidence that Lundelius

or anyone claiming under him gave actual notice to appellees that the permissive use of the land inquired about in his charge to the jury had been revoked prior to May, 1966.

The Trial Court rendered judgment for appellees.

Appellants' first point is that the Trial Court erred in overruling their motions for an instructed verdict and for judgment notwithstanding the verdict. We overrule this point.

■ The question of adverse possession is essentially a question of fact and only in rare instances is the court justified in holding, as a matter of law, that it has been established. Adverse Possession, 2 Tex.Jur.2d, Sec. 226.

There were only three witnesses who testified for appellants on the issue of adverse possession and use of the land. They were Appellant Lundelius, Mack Morris and A. L. Alley. Mr. Lundelius and Mr. Morris were interested witnesses. Mr. Lundelius was a plaintiff and Mr. Morris had conveyed the 3.33 acre tract to Mr. Lundelius by a general warranty deed. Mr. Alley was a lessee of the tract from both Morris and Lundelius. He was an interested witness to the extent that he might be civilly liable for the use of the tract if his lessors did not own it. Mr. Alley testified that he grazed cattle on the tract. This use and similar use of the tract by others is not disputed.

Mr. Alley also testified that he did not hear any claims of title asserted by any of the parties or their predecessors in interest having any bearing on this controversy.

The basis of appellants' motions is that while the record title to this tract was in appellees and their predecessors in title possession of it was held by Appellant Lundelius and his vendor Mack Morris and that if Appellee Philip Thompson, Jr. had inquired of Mack Morris in 1957 when Mr. Thompson acquired the record title to this tract the nature of the possession which he then held of this tract he would have learned that Mack Morris was claiming it as owner. Mr. Thompson made no such inquiry. Appellants cite Ramirez v. Smith, 94 Tex. 184, 59 S.W. 258 (1900), to sustain this contention.

It is quite true that the possession of this tract by Mr. Morris was sufficient to put Mr. Thompson on inquiry concerning the nature of his possession. Presumably he would have learned, upon inquiry, that Mr. Morris was claiming title to this tract since 1945.[1] He would also have learned that Mr. Morris had no record title to this tract and that its use by Mr. Morris and others in whose fences it was enclosed was for the convenience of the parties under an arrangement which we will later describe and with the permission of the owners of the tract. Mr. Thompson would also have learned that Mr. Morris was claiming a larger tract under a deed which did not convey this tract even though it was under his fence enclosing the larger tract.

■ Under these circumstances his possession was referable to the deed and did not extend to this tract unless his use of it was such as to give notice of exclusive adverse possession. Orsborn v. Deep Rock Oil Corp., 153 Tex. 281, 267 S.W.2d 781 (1954). Whether his use of this tract was of this nature is, at most, a question of fact under this record.

The testimony of Mr. Morris that he claimed this tract as owner since 1945 does not establish this as a fact conclusive in nature. The jury could have believed that this was an afterthought and conceived only when he made the sale to Lundelius and included it in the deed and received a consideration for it.

■ Appellants' second point is that the Trial Court erred in submitting to the jury

---

1. We could just as easily presume that Mr. Morris would have told him that his possession of the 3.33 acre tract was permissive and not adverse.

the issue inquiring as to whether the use of the 3.33 acre tract by Lundelius and those under whom he claimed title to it was with the permission of the landowners on the north side of Brushy Creek prior to June 12, 1959, when the tract was conveyed, along with other lands, from Morris to Lundelius.

Just why this was error, the point does not state. However, we gather from the discussion under this point that it is contended that the evidence is insufficient to support the answer of the jury to it; also, that the issue was defective in using the terms "permissive use" rather than "permissive entry."

We overrule this point.

Appellants' land, excluding the tract in suit, lies south of Brushy Creek. Appellees' land, including the tract in suit lies north of Brushy Creek.

Since 1912 and through October 12, 1949,[2] the north boundary of the land appellants own or have a lien on was described as the "mid-channel of the N. prong of Brushy Creek."

There is a fence north of Brushy Creek on the Thompson, Jr. land which leaves an area of 3.33 acres between the fence and Brushy Creek. This is the area in dispute. Mack Morris included this tract in his deed of June 12, 1959, to Lundelius.

This tract was never improved, was never cultivated and was used only for grazing purposes.

The record shows that the bed of Brushy Creek was rocky and that it would be impractical to build a fence in the middle of the stream. The fence was sufficient to turn cattle. It has been in place, but repaired, for more than fifty years.

There is no direct evidence of an express agreement between the owners of the affected lands as to why the fence was built north of Brushy Creek. There is ample evidence of circumstances from which this reason can be satisfactorily determined.

Immediately to the east of the tract in suit there is a tract containing 3.91 acres which lies south of Brushy Creek (Morris-Lundelius land) but north of a fence constructed by former owners which fence is a continuation of the fence above mentioned and which physically separates the lands occupied by Lundelius from the lands occupied by Thompson. The obvious purpose of this fence was to enable livestock reaching water in Brushy Creek on the west end where the tract in suit is located from the Lundelius lands and on the north end where the 3.91 acre tract is located south of Brushy Creek from the Thompson lands.

Colonel Thomas Allen, a retired Colonel in the Army Corps of Engineers testified. The record shows that his father and then he had owned the Lundelius land south of Brushy Creek from 1912 to 1936. We quote from his testimony:

"Q  Now, I want to ask you, then, Col. Allen, if that fence—just have a seat, now—if that fence line was there when you were a boy, and living on this land, and later on, when you bought it and occupied it, was that same fence line located at that position?

A  Substantially, yes. I have not seen the property since 1935. That's more than thirty-five years ago, but as it stands there now, it is the substantial or the approximate location of the fence at that time. * * *

Q  Now, then, from your deeds, do you recall, Mr. Allen, at the time your father owned it and at the time you owned it, where was the deed line of your property?

2.  This was when Mack Morris was conveyed land south of Brushy Creek by F. W. Thoma.

A  The north boundary was the meanders of the creek. * * *

Q  And at that time, was there a fence along that line?

A  There was a fence on the south side and also a fence on the north side. [of Brushy Creek]

Q  Yes, sir. Now, at the time, do you recall any events as a boy and with your father, do you recall any events where you or your father, either asserted any title to this land up here north of Brushy Creek? Did you assert any title to that land?

A  We did not. * * *

Q  Now, Mr. Allen, in order for the landowners during the time that you owned it to have access to this water, do you know of any other method that could be used other than to put the fence line just like it was in order that the landowners on both sides of that creek could get to the water?

A  I could conceive of no other reasonable, just way, to divide it.

Q  And as the fence line stood there, it was the convenient way of making use of the water on Brushy Creek?

A  Yes, sir.

Q  Between the landowners?

A  Correct.

Q  And this use of the land on both north and south was a permissive use of all owners. * * * Was it permissive use?

A  Yes, it was.

Q  This was a permissive use,—now, we've limited your question to the permissive use of this land that you used north of Brushy Creek.

A  Yes, sir."

Mr. L. C. Morrison testified. He bought the Thompson, Jr. land in 1946 from E. R. Woolsey and sold it to H. J. Arnold in 1953. At the time Mr. Morrison owned this land Mack Morris owned the land south of Brushy Creek and the two had a conversation about rebuilding the fence south of Brushy Creek. Mr. Morrison did not claim the 3.91 acre tract south of Brushy Creek and believing this to be owned by Mack Morris he wanted permission to bulldoze some trees to straighten the fence. Mr. Morrison only claimed permissive use of the 3.91 acre tract. He also testified that the use by Mack Morris of the tract in suit north of Brushy Creek was by his permission. On cross examination he testified:

"Q  It was agreeable with you because you were getting the use and occupancy of a tract of similar size on the south side of the creek, is that correct?

A  That's the way I figured it, yes.

Q  And your, this business of it being permissive and agreeable, was based on two things, was it not? Number one, you knew that your deed called for the creek as the boundary line, and you presumed that Mr. Morris's also called for the creek as the boundary line and further, that he had the use of about the same amount of land north of the creek as you had south of the creek? Is that what caused you to say that it was permissive, is that correct?

A  I believe that's right.

Q  Does that sound like a fair statement of your reasoning?

A  I don't know how to analyze it any other way. He had about as much use of my land as I had of his.

Q  Right.

A  So the fence lines, whether you are interested or not, has been there for sixty or eighty years before I went

out there, so if everybody else agreed, why shouldn't the new owners agree.

Q The point is, as far as any agreements made between the parties eighty years ago or thereafter, you were not familiar with any? You don't know what they were thinking?

A I know where the fence line was.

Q And what use and occupancy you had of the land out there?

A Yes, sir.

Q All right, sir."

It is our opinion that the evidence as to the physical facts and the testimony of the parties as to the need for and use of the fence in question give rise to no fair implication other than that the parties involved made and carried out a neighborly, common sense agreement that the use of each other's land as shown was permissive and that the jury was within bounds in so finding.

Special Issue No. 1 inquired whether the use of the 3.33 acre tract by Lundelius and those under whom he claimed was "permissive use" by the landowners on the north side of Brushy Creek prior to the Morris-Lundelius deed. Appellants objected to this issue on the ground that the inquiry was as to "permissive use" rather than "permissive entry." We overrule this point as to this objection.

An entry on land may be hostile and constitute a trespass. It may become permissive thereafter, for example, by recognition of the owner's title by accepting a lease from him. It is only important that the permissive use commence before title by adverse possession has been acquired by those in possession.

Appellants' third point is that the Trial Court erred in submitting Special Issue No. 2 which reads:

"SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that G. R. Lundelius and Mack Morris either in person or through a tenant or tenants, or partly in person and partly through a tenant or tenants, held exclusive, peaceful and adverse possession of the land in controversy in this suit using or enjoying same for any period of ten years, or longer, prior to the erection of the metal fence by Philip H. Thompson, Jr.?

Answer 'we do' or 'we do not.'

Answer: We do not."

Appellants did not object to the submission of this issue but they did bring forward a bill of exceptions regarding a special issue and instructions requested by them pertaining to the ten year statute of limitations. We quote from appellants' bill:

"BE IT REMEMBERED, that upon the trial of the above entitled and numbered cause on February 27, 1970, after both Plaintiffs and Defendants had rested and closed and while counsel for both Plaintiffs and Defendants were working with the Court in the preparation of the charge to be submitted to the jury, attorney for Plaintiffs requested the Special Issue and accompanying instructions as follows:

'Plaintiffs' Requested Special Issue No. ——

Do you find from a preponderance of the evidence in this case that G. R. Lundelius, either in person or through a tenant or tenants, or partly in person and partly through a tenant or tenants, held exclusive, peaceful and adverse possession of the land in controversy in this suit using or enjoying same for any period of ten years, or longer, prior to the erection of the wire fence by Philip H. Thompson, Jr.?

Answer "We do" or "We do not"

Answer: ——————

In connection with the foregoing Special Issue you are instructed that adverse possession need not be continued in the same person, but when held by different persons their possession must be successive and there must be a privity of estate between them. "Privity of Estate" means privity of possession.'

The Court approved the foregoing Special Issue and accompanying instructions for submission to the jury along with the remainder of the charge, but in the process of typing the charge said explanatory instructions were entirely omitted. While attorney for Plaintiffs was arguing the case to the jury and while reading the Special Issue No. 2 to the jury said attorney noticed that something was wrong with the wording of said Special Issue for the reason that it appeared from reading said Special Issue that inquiry was being made to determine whether or not G. R. Lundelius had had adverse possession of said land for a period of ten years or more prior to the erection of a wire fence when under Plaintiffs' theory of the case and under evidence produced by Plaintiffs the use and possession of G. R. Lundelius was for a less than ten years and Plaintiff was relying on the tacking of possession of the predecessor in title to G. R. Lundelius, Mack Morris. Attorney for Plaintiffs stopped his jury arguments and stated to the Court: 'Your Honor, there is something wrong with this Special Issue No. 2 because it inquires of the possession of G. R. Lundelius over a period of ten years when our evidence in no way goes to prove that G. R. Lundelius had possession of the land for ten years but rather our case under the ten year statute and is based upon the adverse possession of both G. R. Lundelius and his predecessor in title, Mack Morris.' The Court replied 'That is your issue is it not?' Attorney for Plaintiffs replied 'Yes, your Honor, it is Plaintiffs' Issue but there is something wrong with it because in the form that it is in to an-

swer affirmatively, the jury must find that Mr. Lundelius had possession for a full ten years without any tacking of possession of Mack Morris and Plaintiff is not required to prove that.' The Court then replied 'Its your Special Issue which you requested is it not?' Attorney for Plaintiffs then replied 'Yes, your Honor, it is our Issue but it is not in correct form; could I add to this Issue the name "Mack Morris" to be inserted right after the name of G. R. Lundelius?' to which the Court replied 'Yes.' "

We quote from the Trial Court's approval and qualification of this bill:

"The foregoing Plaintiff's Bill of Exception No. Two having been reduced to writing by the attorney for Plaintiffs and having been presented to the undersigned Judge of the said Court for allowance and signature within the time required by law, is hereby qualified and as qualified, is approved. The Court's Main Charge was presented to attorneys for their objections and exceptions and the Plaintiff's attorney made no objection to Special Issue No. 2 in his objections and exceptions. After the objections and exceptions had been made by both attorneys, the Charge was then read to the Jury. The attorney for the Plaintiffs, Mr. McMaster, in arguing the case to the Jury noticed that he should have included, 'G. R. Lundelius and Mack Morris.' He then asked permission of the Court to insert the words, 'Mack Morris.' The Court then asked the attorney for the Defendants, if he had any objection to adding the name 'Mack Morris' to the Charge. Mr. McClain stated to the Court, in the presence of the Jury, that he had no objection to adding the name, 'Mack Morris' to the Charge. This was done. The attorney for the Defendants did not, at that time, ask for the special instruction as set out in this Bill of Exception. Had the attorney for the Plaintiffs asked for the special instruction to be given at that time, when he was arguing the case to the Jury, it would have been given. How-

ever, this matter was not called to the attention of the Court in the Exceptions and Objections to the Court's Charge and was not called to the attention of the Court at the time of the argument. The Court was aware of the fact that the Plaintiffs were relying upon the Ten Year Statute of Limitation. By adding the words, 'Mack Morris,' the Jury then had before it the Ten Year Statute of Limitations. The Jury, had it so believed, could have then answered the Special Issue, 'We do.' However, the Jury did answer the question adversely to the Plaintiffs and stated, 'We do not.' "

■ The Trial Court's qualification of Appellants' bill removes any possible error in this matter. When the defect in the issue was called to the Court's attention in an informal manner, the Court corrected the issue as orally requested by counsel for Appellants and with the consent of opposing counsel. This was commendable on the part of all concerned. We do not believe that appellants have any just complaint that the Trial Court did not go beyond the oral request of counsel for appellants.

Certainly the proceedings were not in compliance with Rules 272 and 274, T.R.C. P. See Allen v. American National Ins. Co., 380 S.W.2d 604, Tex.Sup. (1964).

Point three is overruled.

Appellants' last point is that the Trial Court improperly instructed the jury as to the meaning of the term "Claim of Right."

The Trial Court instructed the jury:

" 'Claim of Right' must be manifested by declaration or by open or visible act. If there is no verbal assertion of claim to the land brought to the knowledge of the landowner, the adverse possession must be so open and notorious and manifested by such open or visible act or acts that knowledge on the part of the owner will be presumed."

Appellants requested the Trial Court to define "Claim of Right" as follows:

" 'Claim of Right' as that term is used herein is meant a claim with the intent to claim the land as his own and to hold it for himself."

■ Appellants' bill of exceptions presenting this matter was qualified by the Trial Judge as follows:

"The Plaintiffs did submit to the Court in writing certain definitions to be included within the Court's Charge. Among these definitions was 'Claim of Right' as set out in the foregoing Bill of Exception. The Attorney for the Defendant also submitted to the Court a definition of Claim of Right. The Court was of the opinion that the definition as given had been approved by the Supreme Court of Texas and was a proper definition. This explanation concerning, 'Claim of Right' was given and written into the Charge. The Charge, as prepared by the Court, was handed to the Attorney for Plaintiffs and he was given ample time to prepare his objections and exceptions to the Court's Charge. From the objections and exceptions as made by the Plaintiffs Attorney to the Court's Charge was no exception or objection to the definition and explanation as written in the Court's Charge. The trial court was then of the opinion that the Attorney for the Plaintiff had no further objection to the definition and explanation as written in the Court's Charge. The Court was of the opinion that the definition and explanation as given was acceptable to the Plaintiffs and the instruction was given as contained in the Court's Charge."

To permit appellants to complain successfully under these circumstances would be without precedent and would turn judicial order into disorder. The point is overruled.

Finding no error, the judgment of the Trial Court is affirmed.

Affirmed.

PHILLIPS, C. J., not participating.