H. S. DeARMAN, et ux., Appellants,

v.

Larry J. SURLS, Administrator of the Estate of O. A. Phillips, Sr., Deceased, et al., Appellees.

No. 1389.

Court of Civil Appeals of Texas, Tyler.

May 7, 1981.

Rehearing Denied June 4, 1981.

Karl R. Albert, Bishop, Lamsens & Brown, Fort Worth, for appellants.

Willis Daniel Moore, Jr., Michael George, Moore, Bateman & George, Athens, for appellees.

MOORE, Justice.

Plaintiffs, Larry J. Surls, administrator of the estate of O. A. Phillips, Sr., et al, brought this trespass to try title suit against H. S. DeArman and wife, Marjorie DeArman, seeking to recover title and possession of a 9.43-acre tract and a .047-acre tract of land situated in Henderson County, Texas. Plaintiffs alleged that they were the record owners of the title to the land in controversy and sought a judgment for title and possession. The DeArmans answered with a plea of not guilty and by way of a cross-claim asserted that they had perfected title under the ten-year statute of limita-

tions. Tex.Rev.Stat.Ann. art. 5510. Trial was before a jury. At the close of all the evidence defendants-cross-claimants made a motion for an instructed verdict which was overruled. The cause was submitted to the jury upon the following special issue: "Do you find from a preponderance of the evidence that the DeArmans held exclusive, peaceable and adverse possession of the 9.47 acres in question, cultivating, using and enjoying the same for a continuous period of ten (10) years or more before April 14, 1978?" In response to the issue, the jury answered: "We do not." Defendants challenged the verdict by filing a motion for judgment non obstante veredicto. After the motion had been overruled the trial court entered judgment on the verdict awarding plaintiffs a recovery of title and possession to the land in question. From said judgment, the DeArmans, hereinafter referred to as "appellants," perfected this appeal.

We affirm.

This controversy arose·in 1978 when, as a result of a survey of the Phillips' land, it was discovered that although the Phillips' deed embraced the 9.43-acre and .047-acre tracts, these tracts were not encompassed within the fences enclosing the Phillips' land, but were within the fences enclosing the DeArmans' land which was adjacent to the Phillips' land on the south side thereof. It is undisputed that the DeArmans' deed does not describe any part of the two tracts in question.

The record shows that the Phillips' land, consisting of 88 acres, was acquired by deed by O. A. Phillips, Sr., in June 1950. The DeArmans' land contained 551 acres and was acquired by the defendants' ancestors in June 1940. The fence separating the Phillips' land and the DeArmans' land is described in the evidence as a four- or five-strand barbwire fence which was supported in some places by fence posts and was attached to trees in other places. The fence had been in the same location for more than fifty years. The record is silent as to when, or by whom, or for what purpose the fence was originally built. It was in existence at

the time each party acquired title to their respective tracts of land. The parties and their ancestors kept the fence in good repair by their common efforts and apparently believed that the fence was situated on the south boundary line of the Phillips' land as described in the Phillips' deed.

The testimony shows that the DeArmans or their tenants used the 551-acre tract for the purpose of grazing cattle and that such use has been continuous since they acquired title to the land in 1940. While there was some testimony that cattle tracks and droppings were found on the land in controversy, the record does not show, however, the number of cattle or how often they may have grazed on the land in controversy. The disputed land is described in the testimony as being heavily wooded. The only other testimony as to the use of the disputed tract is to be found in the testimony of appellant, H. S. DeArman, wherein he testified that he made use of an old roadway running through the 9.43-acre tract for the purpose of going to and from the back part of his 551-acre tract. He further testified that he might have cut a few sticks of cordwood on the land and that he granted permission to several individuals to hunt on the disputed tracts. The undisputed proof shows that the principal use of the disputed tract made by appellant was the grazing of cattle in connection with the 551-acre tract owned by them.

Under points 1 through 4 appellants contend that the trial court erred in (1) refusing to grant their motion for an instructed verdict and (2) refusing to grant their motion for judgment non obstante veredicto, because the undisputed evidence and the judicial admissions made by appellees conclusively establish that appellants adversely possessed the 9.47 acres in controversy for a continuous period in excess of ten years prior to April 14, 1978. We find no merit in either of appellants' contentions.

The question of adverse possession is essentially a question of fact and only in rare instances is the court justified in holding, as a matter of law, that it has been established. *Lundelius v. Thompson*, 461 S.W.2d 153 (Tex.Civ.App.—Austin 1970, no writ); *Nelson v. Morris*, 227 S.W.2d 586 (Tex.Civ.App.—Fort Worth 1950, writ ref'd n. r. e.); 2 Tex.Jur.2d Adverse Possession sec. 226.

To establish title by limitation, the possession of the claimant must be adverse; that is, there must be an actual and visible appropriation of the land commenced and continued under a claim of right inconsistent and hostile to the claim of another. Tex.Rev.Civ.Stat.Ann. art. 5515. Claim of right means that the entry by the claimant must be to claim the land as his own, to hold it for himself, and such must continue to be the nature of his possession. Claim of right is an essential element of adverse possession. The intention of the claimant to hold it for himself must be manifested by open visible acts or declarations showing such purpose. *Houston Oil Company of Texas v. Jones*, 109 Tex. 89, 198 S.W. 290 (1917); *Orsborn v. Deep Rock Oil Corp.*, 153 Tex. 281, 267 S.W.2d 781 (1954). If there is no verbal assertion of a claim of right to the land brought to the knowledge of the owner, the adverse possession must be so open and notorious and manifested by such open and visible acts that knowledge on the part of the owner will be presumed. *Orsborn v. Deep Rock Oil Corp.*, supra.

Contrary to appellants' contention we are of the view that the evidence fails to conclusively establish that appellants perfected title by adverse possession. Under the evidence in this case the fencing of both the 9.43- and .047-acre tracts was purely casual. It is undisputably shown that the DeArmans did not build the fence intending to enclose the land in controversy with their land. The record affirmatively shows that no one knew who built the fence or for what purpose. The significance of an intentional fencing of the land by a claimant is that the act itself is such as to evidence an assertion of claim of ownership. Our limitations statutes do not contemplate that a claimant of adverse possession can derive aid, in establishing his claim, from an enclosure casually created by third persons in effecting a different purpose of their own,

and who are strangers to both the claimant of adverse possession and the true owner of the enclosed land. In such a case the enclosure so far as our limitations statutes are concerned, has no more effect than if same had never come into existence. *West Production Co. v. Kahanek*, 132 Tex. 153, 121 S.W.2d 328, 331 (1938). Where the disputed land is casually or incidentally fenced, the grazing of cattle on the land has never been regarded as an actual and visible appropriation of the land within the meaning of article 5515, Tex.Rev.Civ.Stat.Ann.; *McDonnold v. Weinacht*, 465 S.W.2d 136 (Tex.1971); *Orsborn v. Deep Rock Oil Corp.*, supra.

█ In the instant case, the entry of the cattle upon the disputed land was presumably made by the cattle straying thereon from appellants' land. The record does not disclose how often cattle may have casually strayed onto the land in controversy. The only other evidence of visible appropriation is the cutting of a few sticks of pulpwood and the use of an existing roadway on the land in question. These acts were not sufficient of themselves to evidence adverse possession for the reasons stated in *McDonold v. Weinacht*, supra; *Orsborn v. Deep Rock Oil Corp.*, supra, and *West Production Company v. Kahanek*, supra.

█ Closely related to the principle of incidental or casual enclosure is the question of the presence of the essential element of a "claim of right." The burden of proving every essential element of adverse possession, including the element of a "claim of right" is on the claimant. *Orsborn v. Deep Rock Oil Corp.*, supra.

"No matter how exclusive and hostile to the true owner the possession may be in appearance, it cannot be adverse unless accompanied by the intent on the part of the occupant to make it so. The naked possession unaccompanied with any claim of right will never constitute a bar." *Houston Oil Co. of Texas v. Stepney*, 187 S.W. 1078, 1084 (Tex.Civ.App.—Beaumont 1916, writ ref'd).

█ There is no evidence in the record of any written or verbal claim of ownership of the land in controversy by appellants or their ancestors. Thus, appellants' claim of right must be established by the conduct of appellants. We have seen that the incidental enclosure of the land and the occasional grazing of it do not constitute evidence of adverse or hostile possession. This means also that such actions do not constitute evidence of a "claim of right." The other facts in the record, instead of intending to prove open or visible acts disclosing an intention to claim the land, actually negate the existence of such intention. Neither appellants nor their ancestors ever rendered the land in dispute or paid any taxes thereon, although they paid taxes on the land they held under their deed. They never executed any title instruments affecting it, although they did execute oil and gas leases and grazing leases affecting the land held by them under their deed. In short, there is no proof of any open or visible act on the part of appellants or their ancestors that manifests an intention to claim the land as their own.

Appellants' contention that appellees judicially admitted their claim of adverse possession during trial is without merit and is overruled. In this connection, appellants rely upon the testimony of appellee, Larry J. Surls, administrator of the estate of O. A. Phillips, Sr., wherein he testified that although he had served as administrator of the estate only since 1977, he knew that the DeArmans had been using the land in question for over twenty years. While this testimony may constitute an admission by the estate of O. A. Phillips, Sr., that appellants actually used the land for more than twenty years, Mr. Surls denied that appellants or their ancestors ever asserted any verbal claim of ownership until after the 1978 survey.

█ In order to prove a judicial admission of adverse possession, appellants had the burden of not only showing that the administrator had knowledge of their use of the land but also had the burden of showing that he admitted they were asserting ownership under a "claim of right." Since he did not admit that he knew they

were asserting ownership under a claim of right, the evidence fails to show a judicial admission of adverse possession.

 Appellants' repair of the fences, cutting a few sticks of pulpwood, using and repairing the roadway, giving permission to others to hunt, and permitting their livestock to graze on the disputed tract does not, in our opinion, under the circumstances disclosed by the record, establish an actual and visible appropriation of the land as required by article 5515, supra. At most, the evidence would only be sufficient to create a fact question for the jury upon the issue of adverse possession. Since the proof offered by appellants falls short of establishing adverse possession as a matter of law, it follows that the action of the trial court in refusing to grant appellants' motion for instructed verdict and motion for judgment n. o. v. does not reflect error. Accordingly, points one through four are overruled.

By the fifth point appellants assert that the trial court erred in entering judgment on the verdict because the jury's finding that appellants had not adversely possessed the land in question is devoid of support in the evidence.

In situations such as this where a jury returns a negative answer to an issue upon which the proponents have the burden of proof, the jury's negative answer need not be supported by affirmative evidence. Therefore, it avails the complaining party nothing to assert on appeal that a negative answer is without support in the evidence. Under these circumstances, the complaining party is placed in the position of having to contend that the evidence establishes the issue as a matter of law. *C. & R. Transport, Inc. v. Campbell,* 406 S.W.2d 191 (Tex. 1966); *Prunty v. Post Oak Bank,* 493 S.W.2d 645, 646–47 (Tex.Civ.App.—Houston [14th Dist. 2 1973, writ ref'd n. r. e.); *Smith v. Safeway Stores, Inc.,* 433 S.W.2d 217, 218–219 (Tex.Civ.App.—Tyler 1968, writ ref'd n. r. e.).

Appellants have already contended under their first four points of error that the evidence adduced at the trial showed that they established their claim for adverse possession as a matter of law. In view of our ruling that the evidence offered by appellants did not conclusively establish their claim of adverse possession, we do not believe further discussion is necessary. Accordingly, appellants' fifth point is overruled.

In their sixth point, they contend that the jury's finding in this regard is against the overwhelming weight and preponderance of the evidence. After a review of all the evidence in the record, both that in favor of and that against the jury's finding and the judgment based thereon, we find that we are unable to agree with the contention made by appellants under this point and the point is accordingly overruled.

The judgment of the trial court is affirmed.