HOUSTON OIL CO. OF TEXAS v. LOFTIN.
(No. 174.)

(Court of Civil Appeals of Texas. Beaumont. April 5, 1917. Rehearing Denied May 9, 1917.)

1. ADVERSE POSSESSION ☞68—REQUISITES—CLAIM OF RIGHT.
A party may establish title by adverse possession under the 10-year statute by entering for that express purpose, although he then knew he had no title.
[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 387–393.]

2. ADVERSE POSSESSION ☞49 — EXTENT OF POSSESSION—TRAMROAD.
Plaintiff is not prevented from establishing title by adverse possession under the 10-year statute to a 160-acre tract because defendant's predecessor in title operated a tramroad over a portion of such tract some 12 or 15 years before suit was filed.
[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 250.]

3. ADVERSE POSSESSION ☞49 — EXTENT OF POSSESSION—PUBLIC ROAD.
In action to establish title by adverse possession under the 10-year statute, the fact that a public road through the tract was used during the 4 years preceding suit does not segregate the land on the opposite side from plaintiff's improvements, so as to prevent his claiming title to the entire tract.
[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 250.]

4. ADVERSE POSSESSION ☞114(2) — EXTENT OF POSSESSION—VARIOUS SURVEYS.
Evidence that plaintiff's improvements and a greater portion of his field and pasture were on a survey to which he claimed title to 160 acres under the 10-year statute, warrant a judgment in his favor for the entire 160 acres out of such survey, although small portions of his field and pasture were on another survey.
[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 685, 686.]

5. ADVERSE POSSESSION ☞97—CHARACTER OF POSSESSION—VARIOUS SURVEYS.
Where plaintiff enters intending to acquire 160 acres by adverse possession under the 10-year statute, gradually extends his possession, and makes all his improvements on such survey except small portions of his field and pasture, he acquires title to 160 acres of that survey, irrespective of his rights on adjoining surveys on which he encroached.
[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 537–541.]

Error from District Court, Hardin County; J. Llewellyn, Judge.

Trespass to try title by W. D. Loftin against the Houston Oil Company of Texas. Judgment for plaintiff, and defendant brings error. Affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

H. O. Head, of Sherman, and Parker & Kennerly and Fred L. Williams, all of Houston, for plaintiff in error. D. F. Singleton, of Kountze, for defendant in error.

HIGHTOWER, C. J. This was a suit of trespass to try title filed by the defendant in error, W. D. Loftin, against the plaintiff in error, Houston Oil Company of Texas, in the district court of Hardin county, in which suit the defendant in error, as plaintiff below, sought to recover 160 acres of land out of the Nathaniel Witcher survey in Hardin county, Tex. No specific 160 acres was prayed for, but the allegations of the plaintiff were, in substance, that he was entitled to recover 160 acres of land in said Witcher survey by reason of the fact that he had been in peaceable and adverse possession of same for more than 10 years prior to the filing of the suit, and therefore claimed title to 160 acres under and by virtue of the 10-year statute of limitation. The defendant below, which is plaintiff in error here, answered by plea of not guilty, etc., and by way of cross-action, against certain of its warrantors, who were dismissed, however, from the cause before final judgment was entered. Defendant also set up by trial amendment title under the three, five, and ten year statutes of limitation, in addition to its other titles. The cause was tried before the court without a jury, and resulted in a judgment in favor of defendant in error for a specific 160 acres of land out of the said Nathaniel Witcher survey, including the improvements of defendant in error thereon.

The record shows that the parties agreed in the lower court that the specific 160 acres awarded defendant in error by the judgment was a just and equitable partition and allowance to him, if, in fact, he was entitled to recover 160 acres of the Witcher survey. While it was not admitted on the trial below that the record title to the Witcher survey was in the plaintiff in error, Houston Oil Company of Texas, still there was no contention that the record title was not in plaintiff in error, and we shall assume, for the purposes of the disposition of this appeal, that plaintiff in error showed itself to be the owner of the record title to said Witcher survey, and that it was entitled to recover the same on its cross-action against defendant in error, unless defendant in error showed title to 160 acres thereof under his plea of 10-year limitation.

Without undertaking to quote in detail the testimony of any of the witnesses, we shall state substantially what we believe the evidence shows, as reflected by the statement of facts and the record. The undisputed testimony shows that defendant in error, about December, 1893, entered upon the land in controversy, and that he has lived upon the same continuously ever since that date; that at the time he entered upon said land he knew he had no title to any portion thereof, nor did he claim any title or right thereto, but intended at the time he entered upon the same to acquire title to 160 acres thereof under the 10-year statute of limitation; that at the time he entered upon said land there was a small dwelling house upon the same, into which defendant in error moved, and continued to occupy, and also there was a barn or crib on the land, and also a small field of perhaps 2 or 3 acres in extent. This dwelling house and crib and whatever other buildings there were upon the land at the time defendant in error went there were built by a man named Flowers, but how long before the record does not show, and the field of 2 or 3 acres was cleared and was used by Flowers, but as to what claim, if any, Flowers made to the land, or any portion thereof, the record does not show. Some years prior to 1893, 100 acres of land in the northeast corner of said Witcher survey was run out and surveyed and designated by specific metes and bounds, and therefore segregated from the remainder of said survey. This 100 acres was commonly called and known as the "Riley tract," and is so designated by the witnesses who testified in the case. The undisputed testimony shows that at the time defendant in error entered upon the land in question, as herebefore stated, he did not know where the lines of the Riley tract were, but that after he had been there about a week he ascertained the boundaries of the Riley tract. The testimony further shows that another survey of land called the Frederick Lewis adjoins the Witcher survey on the north; the north line of the Witcher being the south line of the Lewis. The undisputed testimony further shows that during all the time that defendant in error has lived on the Witcher survey he has cultivated, used, and enjoyed the same, and made a crop thereon every year, and that he has continued to enlarge his field from year to year, and that at the date of the trial had inclosed a field consisting of approximately 6 or 7 acres of land on the Witcher survey. The evidence further showed that the next year after defendant in error went into possession of the land in controversy he inclosed between 12 and 14 acres of land for the purposes of a pasture, all of which was on the Witcher survey, with the exception of a very small portion, which extended over on the Lewis. This pasture was inclosed by a substantial wire fence, which has been regularly kept up from the time it was built until the date of the trial, and was used by defendant in error for pasturing his cattle, numbering from 4 or 5 to 50 head of cattle at a time. The evidence shows also that a small portion of defendant in error's field, perhaps 1 or 1½ acres, extended over the north line of the Witcher survey, and onto the Lewis tract, but as to just when this field was extended over onto the Lewis is not shown by the record, but

that fact, perhaps, is immaterial anyway. The undisputed testimony further shows that defendant in error has never paid any taxes on any portion of the Witcher survey, nor has he rendered the same for taxation. The record further shows that about 11 years after defendant in error entered upon the Witcher survey, he purchased from an uncle of his 20 acres of land out of the Riley tract above mentioned, but defendant in error has never lived upon any portion of this 20 acres, nor was the same covered by any of his improvements, in so far as the record discloses. No suit was ever brought against defendant in error to recover any portion of the land in controversy, and his possession, as hereinbefore mentioned, has been continuous and peaceable, and 160 acres of the same has been avowedly claimed by him.

[1] Plaintiff in error's first assignment of error is, in substance, that the trial court erred in rendering judgment for defendant in error, for the reason that the undisputed evidence adduced upon the trial showed that defendant in error entered upon the Witcher survey, not under any claim of right, but for the express purpose of obtaining title to 160 acres thereof under the statute of 10-year limitation, and that, therefore, his possession of said land was lacking in that claim of right required by statute before title under the statute could be matured. This assignment is submitted as a proposition.

In support of this contention plaintiff in error cites the case of Stevens v. Pedregon, 106 Tex. 576, 173 S. W. 210. The point here raised has been twice before this court, and each time the assignment raising the point has been overruled. It was raised the first time before this court in the case of Houston Oil Co. of Texas v. Stepney, 187 S. W. 1082, and in that case this court discussed the proposition here advanced at some length, and many of the authorities relative to the contention are there cited and discussed. We shall therefore not enter into a discussion of the question here, but overrule the assignment, and call attention to the following authorities: Charle v. Saffold, 13 Tex. 112; Kinney v. Vinson, 32 Tex. 126; Craig v. Cartwright, 65 Tex. 422; Link v. Bland, 43 Tex. Civ. App. 519, 95 S. W. 1110; Houston Oil Co. of Texas v. Stepney, 187 S. W. 1082; Brown v. Fisher, 193 S. W. 357, decided at the present term, and not yet officially reported.

[2] Plaintiff in error's second assignment of error is as follows:

"Judgment should have been rendered for the defendant at least for all the land in controversy, except so much as might be included in the triangle made by the tramroad on the Witcher survey where it crossed the west boundary line of the Riley 100-acre tract, and the north boundary of the Witcher survey, which is also the south boundary line of the Frederick Lewis, because for 3 years, during which time the owner had color of title and title such as is required by the 3-year statute, it was in possession by this tramroad of the Witcher survey,

and said tramroad and possession was therefore effective to segregate the land on the west side thereof from the land on the east side thereof. And plaintiff was not entitled to recover any land west of the tramroad without showing that after the tramroad ceased to be used that he had 10 years' adverse possession of the land west of the tramroad."

This assignment is also submitted as a proposition.

As we find no map, plat, or anything else in the record designating or showing the relative locations of the Witcher survey, the Riley 100-acre tract, and the Frederick Lewis survey, we are unable to make as plain as we would like that portion of this opinion touching this assignment, but we think it will suffice to make the following statement from the evidence, as contained in the record relative to this assignment. From the best we are able to ascertain from the record, all of the improvements of the defendant in error on the Witcher survey are situated in somewhat of a triangle between the west line of the Riley tract, the north line of the Witcher survey, and what is now a public road, which road was at one time a tramroad, presumably built and constructed by Olive Sternenberg & Co., who were predecessors in title of the plaintiff in error herein. It is a fact, as shown by the undisputed testimony, that a tramroad was built across the Witcher survey some 400 or 500 yards west of the improvements of defendant in error, and that such tramroad was put there some time prior —perhaps 3 or 4 years prior—to 1893, at which time defendant in error entered into possession. The record does not disclose, however, with any degree of certainty, that this tramroad was ever operated, but it might be inferred from the statement of facts that it was operated at least for a short period of time after defendant in error went into possession; but the evidence is conclusive and undisputed to the effect that this tramroad was entirely abandoned and removed at least 14 or 15 years prior to the trial of this case in February, 1916, one of the witnesses testifying that the tramroad was removed, to his certain knowledge, 22 years prior to the time of trial. Now plaintiff in error takes the position that the mere construction of this tramroad and its operation for a short period of time by Olive Sternenberg & Co., predecessors in title of plaintiff in error, amounted to a segregation of all the land on the west side thereof from the land on the east side thereof, and that, therefore, defendant in error, by reason of his actual possession and improvements being on the east side thereof, could acquire no title by adverse possession to any portion of the land on the west side of said tramroad without defendant in error showing that after the tramroad ceased to be used he had 10 years' adverse possession of the land west of this tramroad. Plaintiff in error's argument on this point is that it is an elementary principle that where the true

owner of land is in actual possession of a part of the land covered by his title thereto, such owner has constructive possession of all of the land included in such title, which is not in the actual possession of a trespasser, though the trespasser may be claiming 160 acres under the statute of limitation, and though in the absence of such actual possession by the owner he would have, by virtue of the statute, possession to the limits of his claim to 160 acres. We do not for a moment doubt the correctness of the rule contended for by plaintiff in error, which is that when the true owner of land enters into actual possession thereof, either by himself or through a tenant, such actual possession, even though of only a part of the tract, draws to it the constructive possession of all the tract not in the actual possession of one who is a trespasser; but we do not think that the principle contended for by plaintiff in error is conclusive or has application to the case before us. If we shall concede that the construction of a tramroad across the Witcher survey by Olive Sternenberg & Co. was such an actual possession by that company as drew to it the constructive possession of all the Witcher survey, not in the actual possession of defendant in error, still the record in this case shows, without dispute, that this tramroad was torn up and abandoned for at least a period of 14 or 15 years prior to the filing of this suit, and, as stated by one of the witnesses, for a period of at least 22 years prior to this suit, we do not think that the mere fact that such tramroad was at one time constructed over said survey, and for a short period of time operated by Olive Sternenberg & Co., even though the true owner of the land at that time would have the legal effect to forever segregate all land on the Witcher survey west of such tramroad from all land on the survey east of said tramroad, and it being undisputed by the record that defendant in error remained in possession for this period of time, ranging, as the witnesses say, from 15 to 22 years after said tramroad had been torn up and abandoned, and continuing all the time to claim 160 acres on said Witcher survey, as he had theretofore done, he was not confined to a recovery of only such portion of the Witcher survey as lay in said triangle east of said tramroad, as contended by plaintiff in error, the quantity of land in which triangle, according to the witness McClelland, being about 50 acres. There is no contention that after this tramroad was taken up and abandoned, Olive Sternenberg & Co., or any one else claiming to be the true owner of the Witcher survey, was ever in actual possession of any portion thereof, either in person or by tenant, and we think that there is nothing in this assignment, and the same is overruled.

[3] The third assignment is:

"The possession of the plaintiff was not for the required 10 years, the exclusive possession required by the statute, because the evidence shows that there was a public road which was a short distance west of the improvements of said claimant, placing said improvements in a little triangle where the public road crossed the northern boundary of the Witcher survey, and the western boundary of the Riley 100-acre tract. And the said claimant, having no actual possession west of the public road, could not mature title to any land west of the public road. And the judgment was erroneous, therefore, at least, in so far as it gives judgment for anything beyond the amount of land east of said road."

The record does disclose, without dispute, that there was a road a short distance west of defendant in error's improvements, and it is undisputed that this road has been used by the public as a passageway for a great many years, and about 4 years prior to the trial of this case below this road was graded, and we infer that it has become a public road in contemplation of law, but up to about 4 years prior to the trial of this case we have no history of this road, the extent of its use, whether or not it was claimed as a public road, or what rights, if any, were set up thereto by the public, or by any person whomsoever, and this being true, we do not believe that it is shown that the presence of such road west of defendant in error's improvements had the effect to segregate the land on the Witcher survey west of said road from the land on the survey east of said road, so as to prevent defendant in error's claim to 160 acres of said survey from attaching to any land west of said road. See 14th Cyc. 1155, and authorities there cited.

[4] The fourth assignment is:

"The court erred in rendering judgment for the plaintiff, because the evidence showed that the improvements which were made the basis of the limitation claim were situated partly on the Nathaniel Witcher survey and partly on the Frederick Lewis survey, which lies just north of the Nathaniel Witcher survey, and partly on a tract of 100 acres out of the Witcher survey called the Riley tract, which was the only part of the Witcher now owned by the Houston Oil Company of Texas. And it was therefore erroneous for the court to permit the plaintiff to select the 160 acres entirely out of the Nathaniel Witcher survey, but it should have held that the plaintiff, if he was entitled to recover any land by his adverse possession, was entitled to recover only 160 acres to be partitioned off in an equitable manner among himself and the owners of the Lewis survey and of the Witcher survey and of the Riley, and there was not sufficient pleading or evidence to show who owned the Lewis survey; and the owner of said survey not being a party to this suit, the court could not adjudge to the plaintiff any 160 acres, since the plaintiff had not claimed by the 10-year statute any particular 160 acres. And the defendant, having record title, should therefore have been given judgment for all the land in controversy."

This assignment is submitted as a proposition.

Plaintiff in error, in support of this proposition, cites the case of Louisiana & Texas Lbr. Co. v. Stewart, 61 Tex. Civ. App. 255, 130 S. W. 202. This court has heretofore had occasion to familiarize itself with the holding of the case cited, but we have again

examined the opinion carefully, and we are unable to see that it has any application to the real contention of plaintiff in error, as made by this assignment. The proof in the case before us is undisputed and overwhelming to the effect that all of the improvements of defendant in error, such as his dwelling house, his cribs, his outhouses, and all of his field, with the exception of perhaps an acre or an acre and a half, and all of his pasture, with the exception of a very small portion, are located on the Witcher survey, and his claim of 160 acres on the Witcher survey has been pronounced and continuous since 1893, and there is not a thing in the record to show that he has ever claimed a foot of land on the Lewis, or any portion of the Riley tract, with the exception of the 20 acres which he purchased from his uncle about 11 years after his entry upon the Witcher. We think, in view of the fact that all of defendant in error's primary improvements, that is, his dwelling house, cribs, outhouses, etc., and the greater portion of his field and pasture being on the Witcher survey, and his claim being pronounced and persistent to 160 acres of land on the Witcher survey, with the boundaries of which he has all the time been familiar, warranted the trial court in rendering judgment in his favor for 160 acres of land on the Witcher survey, regardless of the fact that a small portion of his field and a small portion of his pasture were on the Lewis, as disclosed by the record.

[5] The fifth assignment is:

"The evidence showed without dispute that when the land claimed by adverse possession was first entered upon, it was entered upon by mistake, as to the boundary between it and the Riley 100-acre tract, which had never been clearly defined by the owner of the land on the Riley 100-acre tract. The plaintiff in this case, receiving improvements from the person originally entering by mistake, was not entitled to hold 160 acres by limitation until he made such extension of his actual possession and additions to his improvements as to outwardly and unmistakably indicate that he was claiming 160 acres out of the Witcher survey. And the evidence in this case was insufficient in this particular to support a judgment in favor of plaintiff."

This assignment is submitted as a proposition.

As a matter of fact, there is nothing in the record to show that the man Flowers, who first entered upon the Witcher survey, and put the improvements thereupon, which improvements were taken possession of by defendant in error, entered upon the Witcher survey by mistake, for, as hereinbefore stated, there is nothing in the record to show what claim, if any, Flowers set up to the Witcher, or any other survey, and there is nothing in the record showing any connection whatever between Flowers and defendant in error; but the record does show, without dispute, that defendant in error did not enter upon the Witcher survey by mistake, and shows affirmatively and conclusively that he entered thereupon for the

purpose of acquiring 160 acres thereof, under the 10-year statute of limitation, and that he has continued to extend his possession on the Witcher gradually since he has been there, and as said before all of his improvements are upon the Witcher, with the exception of the small portion of his field and pasture on the Lewis, as hereinbefore stated, and this being so, it is clear to our minds that if defendant in error had acquired a title to any portion of the Witcher survey by reason of the statute of ten-year limitation, then he has acquired a title to 160 acres of land on that survey, whatever may be his rights, if any, on the Lewis or the Riley tract. Plaintiff in error cites in support of this contention the cases of Bracken v. Jones, 63 Tex. 184; Holland v. Nance, 102 Tex. 117, 114 S. W. 346; Bender v. Brooks, 103 Tex. 329, 127 S. W. 168, Ann. Cas. 1913A, 559; Smith v. Jones, 103 Tex. 632, 132 S. W. 469, 31 L. R. A. (N. S.) 153; Titel v. Garland, 99 Tex. 201, 87 S. W. 1152; Plummer v. Canal Co., 177 S. W. 1037, etc. All these cases announce what is commonly known as the encroachment doctrine, with which the able attorneys for the plaintiff in error in this case are quite familiar, and, as we believe, the larger per cent. of the bar of this state, and especially of this part of the state, are familiar, and it would serve no useful purpose to discuss the holding of these cases at length. . Suffice it to say that in the opinion of this court, neither of the cases cited could be correctly construed as holding contrary to the judgment of the trial court, which was in favor of the defendant in error in this case. Those cases have reference to limitation claims where the claimants' principal and primary improvements are all on one tract of land, and some small or slight improvements of his, such as small inclosures, or other incidental improvements, that is incidental to his primary possession and improvements, are on another survey in close proximity to the main improvements, and the claimant by limitation seeks to hold a large quantity, perhaps 160 acres, or the statutory quantity, on the survey upon which are located only the incidental improvements or small inclosure of such claimant, while all his primary and substantial improvements and possessions are on another and adjoining survey, and ever since the opinion of the court in Bracken v. Jones, supra, was rendered, it has been followed and reannounced that a limitation claimant ought not to be permitted to recover a large portion of land under a claim of limitation alone, on a survey on which he did not have his primary improvements, and which he did not put to such use as to reasonably bring notice home to the true owner that adverse and hostile claim was being set up to such survey.

While we have not discussed each of the foregoing assignments at great length, we

are of the opinion that the trial court was correct in rendering judgment in favor of the defendant in error for 160 acres of land on the Witcher survey, as was done, and therefore the judgment is in all things affirmed.