## O'MEARA v. WILLIAMS et al.
### No. 10896.

Court of Civil Appeals of Texas. Galveston.

Jan. 25, 1940.

Rehearing Denied Feb. 29, 1940.

Vinson, Elkins, Weems & Francis, C. E. Bryson, and K. J. Manion, all of Houston, for appellant.

Paul E. Daugherty, Stewart & DeLange, Albert J. DeLange, Emory T. Carl, and Robert P. Beman, Jr., all of Houston, for appellees F. C. Williams and Sophia Williams.

Marlin E. Sandlin and E. J. Fountain, both of Houston (Donald Campbell and L. A. Thompson, both of Tulsa, Okl., of counsel), for appellee Stanolind Oil & Gas Co.

MONTEITH, Chief Justice.

This is an appeal in an action in trespass to try title brought by appellees, Sophia Williams, and her husband, F. C. Williams, against appellant, M. P. O'Meara and appellee, Stanolind Oil & Gas Company, and against defendants, J. C. Kelly, Ralph A. Johnston, and H. H. Hay, who have not perfected an appeal herein, to recover the title to and possession of tract No. 141 of South Houston Gardens No. 6, out of the H. & T. B. Survey No. 6 in Harris County, Texas, and for damages.

Appellees, Sophia Williams and F. C. Williams, alleged title in Sophia Williams to said tract No. 141 by virtue of the 10 years statute of limitation, Art. 5510, Revised Civil Statutes. In the alternative, they pled that if the title to said property was not vested as aforesaid in Sophia Williams, same was vested in F. C. Williams and Sophia Williams by record and limitation, and that the interest of F. C. Williams therein had been conveyed to Sophia Williams. By special plea they sought the reformation of a certain lease contract entered into between them and the Stanolind Oil & Gas Company covering tract No. 142, of South Houston Gardens No. 6, in so far as it affected adjoining tract No. 141, involved in this appeal, and for damages for the alleged conversion of oil claimed by them to have been extracted from said tract No. 141 by defendants.

Each of the parties defendant, with the exception of J. C. Kelly, who disclaimed as to tract No. 141, answered by general demurrer, general denial, and a plea of not guilty. H. H. Hay by special answer alleged that all interest claimed by him had been assigned to the Stanolind Oil & Gas Company.

Appellee, Stanolind Oil & Gas Company, by special answer set up various statutes of limitation and a plea of permanent and valuable improvements, and the payment of taxes.

Only one special issue was submitted to the jury—that of adverse possession under the ten years statute of limitations. The jury answered said special issue in favor of appellees, F. C. Williams and Sophia Williams.

Judgment was rendered in favor of said appellees against J. C. Kelly, M. P. O'Meara, Ralph A. Johnston and H. H. Hay, for title and possession of the land sued for, against M. P. O'Meara for the sum of $7,381.76 and against Ralph A. Johnston for the sum of $26.77.

The court found in its decree that appellee Stanolind Oil & Gas Company had a valid subsisting lease covering a ⅞ working interest on said tract No. 141, that appellees Williams had ratified said lease and that Stanolind Oil & Gas Company had properly preserved in the record all questions in regard to its leasehold estate.

This appeal is by M. P. O'Meara. No errors were assigned either in appellant's brief or in the answering brief of appellees Williams, which was filed in due time, to that portion of the judgment in favor of Stanolind Oil & Gas Company.

Appellees F. C. Williams and Sophia Williams, after the submission of said cause to this court, and after said cause had been set down for oral argument and after the filing by appellee Stanolind Oil & Gas Company of its brief herein, filed a brief containing cross-assignments of error to that

portion of said judgment in favor of Stanolind Oil & Gas Company. On motion of Stanolind Oil & Gas Company this second brief was stricken and not considered by the court in this appeal. Duncan et al. v. Scott et al., Tex.Civ.App., 128 S.W.2d 136; Graves et ux. v. Connecticut General Life Ins. Co. et al., Tex.Civ.App., 104 S.W.2d 121; Hinckley-Tandy Leather Co. et al. v. Hazelwood, Tex.Civ.App., 45 S.W.2d 1103.

Sophia Williams, then Sophia Tiechman, contracted to purchase tract No. 142, adjoining tract No. 141 in controversy, in the year 1917. Immediately after the purchase of said tract No. 142, she fenced tracts Nos. 142 and 141 in one enclosure and established a home thereon. She married F. C. Williams in the year 1919, and she and her said husband continued to live thereon up to the date of the trial of this cause.

In 1934 F. C. Williams and Sophia Williams entered into mineral leases with H. H. Hay covering tract 142 and adjoining tract No. 143. Each of said leases contained the following clause: "This lease shall also cover and include all land owned or claimed by lessor adjacent or contiguous to tract particularly described above, whether the same be in said survey or surveys or in adjacent surveys, although not enclosed in the boundaries particularly described above."

H. H. Hay in his answer alleged that he had assigned all interest claimed by him in the land in controversy to Stanolind Oil & Gas Company.

J. C. Kelly acquired title to Tract No. 141 by deed dated November 21, 1914. He and his wife assigned their mineral interest in tract No. 141 to Ralph A. Johnston. By instrument dated September 17, 1934, Ralph A. Johnston assigned all interest claimed by him to Stanolind Oil & Gas Company.

By various instruments F. C. Williams and Sophia Williams admitted the ownership by the Stanolind Oil & Gas Company of a valid subsisting oil and gas lease on said tract No. 141.

■■ Appellant contends that appellees, Williams, having alleged and sought to recover said tract No. 141 as the separate estate of Sophia Williams, are not entitled to a judgment based only on evidence establishing that said property was the community property of Sophia Williams and her husband, F. C. Williams.

Appellees, Williams, pled that Sophia Williams had occupied said premises, using, enjoying and claiming the same as her separate estate and as her homestead for more than ten years prior to the accrual of this action, the commencement of this suit, and the filing of this pleading, during all of which period she had had such land actually enclosed, and that she had acquired said land by virtue of the statute of limitation of ten years.

They further pled: "That in the alternative, if title was not vested as aforesaid in Sophia Williams, same was vested in F. C. Williams and Sophia Williams by record and by limitation as aforesaid, and that any interest of F. C. Williams had heretofore been conveyed to said Sophia Williams."

The jury found on sufficient evidence that Sophia Williams and F. C. Williams had had adverse possession of said tract No. 141, cultivating, using and enjoying the same for a period of ten years prior to February 8, 1935.

The appellees offered in evidence a quitclaim deed from F. C. Williams conveying tract No. 141 to Sophia Williams. Objection to its introduction was sustained when it was shown to have been executed subsequent to the filing of this action.

It is the established law in this state that a plaintiff may plead and pray in the alternative when he is in doubt as to his right to recover upon the cause of action first set up. Turner v. Parker, Tex.Civ.App., 4 S. W.2d 639; Watkins v. Collins, 39 Tex.Civ. App. 350, 87 S.W. 368. The prayer in appellees', Williams', petition in the instant case is framed so as to grant relief under either construction.

■ As to appellant's contention that there is a fatal inconsistency between the allegations of adverse possession by Sophia Williams and the prayer that both F. C. Williams and Sophia Williams recover judgment for the land, as a matter of law and regardless of the intention of the parties, land possessed and acquired by limitation by either spouse during the marriage is community property; Brown v. Foster Lumber Co., Tex.Civ.App., 178 S.W. 787; Odem v. Leahy, Tex.Civ.App., 264 S. W. 218.

This rule is followed in 23 Tex.Jur., page 137, in which it is said: "It is plain that property acquired by pure limitation then—whether by the husband, the wife, or the community—will belong to the com-

munity estate. It is an acquisition after marriage, not by gift, devise, or descent."

■ Further, it is the established rule in this state that in an action of trespass to try title where two or more plaintiffs allege that they are the joint owners of land and the testimony establishes the fact that one or more of said plaintiffs owns said land and that the defendants have no title thereto, judgment will be rendered in accordance with the rights of the parties as established by the testimony. Art. 7387, Revised Civil Statutes; Anderson v. Anderson, 95 Tex. 367, 67 S.W. 404; Gulf, C. & S. F. Railway v. Anderson, 76 Tex. 244, 252, 13 S.W. 196; Gaston v. Wright, 83 Tex. 282, 18 S.W. 576.

■ Appellant further contends that after the marriage of F. C. Williams and Sophia Williams, F. C. Williams became the head of the family and that his actions and intent determined the character of the possession in question as to whether or not it was adverse, and that therefore, since he had testified by deposition prior to the trial of this cause that he would have voluntarily surrendered possession of said property to anyone who had shown him that he had title to the property, the limitation claim of F. C. Williams and Sophia Williams to said tract No. 141 falls.

The following is a portion of the testimony of F. C. Williams on cross-examination pertinent to this contention:

"Q. As a matter of fact you never mentioned 141 or a claim to 141 at any time until after two oil wells were drilled on it, is that right? A. We claimed it all along.

"Q. As a matter of fact you never made claim— A. We were never interfered with during all the twenty years my wife and I had that piece of ground fenced and cultivated it, and there never was a word said one way or the other as to who owned it, or anything about it, to the best of my knowledge, except that my wife and I, if we referred to it at all, we told them that the piece of land belonged to us.

"Q. Who did you tell that to? A. I couldn't say offhand. Different ones.

"Q. Now, Mr. Williams, you never expressed a claim with relation to that land at all to anybody, did you, before the bringing of this lawsuit? A. No, I wouldn't say that.

"Q. Now, as a matter of fact, you nor your wife ever told anybody that you owned that land until after you lost 143, did you? I mean that you owned 141 until after you lost 143, did you? A. We told people all along it belonged to us.

"Q. Now, Mr. Williams, you never told anybody about claiming 141 until here about a year and a half ago, did you? A. Yes, I have.

"Q. Now, Mr. Williams, you say your wife and you took possession of this piece of land along about the time you married— this 141? A. Yes, Sir.

"Q. You knew you didn't have a deed to it, didn't you? A. Yes, sir, I knew I didn't have a deed to it; yes, sir?

"Q. You knew you had a deed to 142 and 143, didn't you? A. Yes.

"Q. You have always been an honest sort of fellow, haven't you, and worked for what you got? A. Yes, sir.

"Q. You have never tried to take anything from anybody without paying for it, have you? A. No, sir, I have been on the square.

"Q. You have been on the square? A. That is right; yes, sir.

"Q. Now, as a matter of fact, Mr. Williams, if a fellow had come out there along in 1920 or 1921 or 1922 or 1923, along in there, before oil was discovered, and showed you that he had a better title than you did, that he had a deed to 141, you would have turned 141 over to him, wouldn't you, like an honest man? A. I would have to, of course, if he had shown me he had title to the ground, I would have had to.

"Q. You would have done it freely and voluntarily, wouldn't you? A. Certainly, I would have had to.

"Q. Just like the honest man you said you were a minute ago? A. I would have been forced to, possibly, if he showed me a deed that was of record down there.

"Q. The only claim she (Mrs. Williams) has to 141 is what you have testified about that occurred by the possession of both of you, is that right? A. She has claimed 141 and cultivated it since 1917.

"Q. When did you marry? A. In 1919.

"Q. Did she already have her fence around 141 when you married her? A. Yes, sir.

"Q. During all the time you have been married to her she has claimed that property to be her own, hasn't she? A. Yes, sir.

"Q. It has always been your understanding that that whole tract extending north to the county road and west to the interurban right-of-way, including what is designated on this plat as 141, it has been your intention and idea that that was owned by Mrs. Sophia Williams along with 142? A. Yes, sir."

In our opinion appellant's contention under this proposition is fully answered by the Commission of Appeals in the recent case of Stewart v. Luhning, Tex.Com.App., 131 S.W.2d 824. In this case Luhning made a statement to the effect that if he had found the true owner of the property in controversy he would have either leased or bought the property from him and that he had remained in that frame of mind for nearly 24 years and until the lawsuit in which the question arose was filed. The court held that while the statement made by Luhning was subject to the interpretation that his possession was in subordination to the title of the record owner, that such was not the only interpretation to which his testimony as a whole was subject, and that the evidence, including said statement, was sufficient to take the case to the jury on the issue of limitation under the ten years statute of limitation.

With the above statement by appellee, F. C. Williams, in the record, the jury found that appellees, Williams, had continuous, peaceable and adverse possession of said tract No. 141, cultivating, using and enjoying the same, for ten years prior to February 8, 1935.

 Further, under the established rule in this state, it is not necessary that a party have or claim the record title to the land in order to establish a title thereto by adverse possession under the ten years statute of limitations. Title by adverse possession under said statute may be established by entering upon said land for that express purpose, although at the time the claimant knew that he had no title thereto; Houston Oil Co. v. Loftin, Tex.Civ.App., 194 S.W. 996; Houston Oil Co. v. Jones, 109 Tex. 89, 198 S.W. 290; Houston Oil Co. v. Brown, Tex.Civ.App., 202 S.W. 102; Fowler v. Woods, Tex.Civ.App., 200 S.W. 247.

 Appellant complains of the following argument to the jury of attorney for appellees, Williams, in discussing the failure of said appellees to include the property in controversy in a statement made for tax-rendition purposes: "It is just as if you gentlemen if you have read the oath, or do you just go in there and have it shoved out there, when you render your property and it says the value of it, and so on—do you turn in the whole value of it or do you turn in 40 per cent, or do you turn in less? Do you consider that you have perjured yourself by a failure to turn in one hundred cents on the dollars on the value, or have you omitted personal property, or have you done any other of those things, or do you consider that you have failed to claim a piece of property because by inadvertence or by deliberateness you have failed to go down to the tax office and render that property and all of it for taxation?"

The record shows that counsel for appellant O'Meara did not at the time the argument was made object thereto, but that he filed a bill of exceptions thereto after an adverse judgment had been rendered against appellant.

It is the rule in this state that unless argument of counsel is so prejudicial or inflammatory that an instruction from the court would not cure the error, the complaining party must object to the argument at the time it is made and request the court to instruct the jury not to consider it, otherwise the error is waived. Walker Avenue Realty Co., Inc., v. Alaskan Fur Co., Inc., et al., Tex.Civ.App., 131 S.W.2d 196, writ of error refused.

Our courts have held that, even in the event counsel for defendant has procured the consent of the trial court to be allowed exceptions to inflammatory argument without the necessity of interrupting counsel by objecting to the argument, counsel cannot thus relieve himself of the duty of making objection at the proper time, nor can the trial court properly adopt such procedure. The court can in most instances prevent harmful results from improper argument, but can more easily do so and with less likelihood of having his action misinterpreted by the jury as indicating his views of the merits of the case, if counsel is reprimanded and the jury is instructed at the time the argument is made and in response to a timely objection. Texas Company v. Gibson, 131 Tex. 598, 116 S.W.2d 686.

We do not think the argument complained of was of such a character as to justify counsel for appellant in failing to ask the court to instruct the jury to disregard such argument, and having failed to do so, ap-

pellant is in no position to complain of said argument.

Appellant also complains of the following argument to the jury by counsel for appellees, Williams, while discussing portions of an affidavit signed by the appellee, Sophia Williams, which had been deleted by the use of a typewriter: "If you look at that you can see the first word or two in there to distinguish it except it looks like 'John said'—it is up to you to read it and see—but you can clearly read following that, 'It was Kelly that fenced that by mistake—he came up here and told me'; you can read it under that and the rest of it you can't read. I will have to submit that for you gentlemen to carefully examine it. It then goes on, after the part x'd out, 'I saw John do the work on that new fence. I asked him who was fencing it', who he was doing it for, and so forth, and the reading of that I submit to you when you read it that you will see that one Mexican John was fencing 150, that that was the stuff that by mistake Kelly was having fenced, and you will note that Kelly never claimed and never asserted a claim to 141 and that that claim there will show on its face."

The court overruled appellant's objection to said argument as constituting a comment and deduction based on evidence already in the record.

Our courts have uniformly held that in argument to the jury counsel is permitted to state to the jury such facts as he in good faith draws from all circumstances of the case and what would be very likely to follow if such inferences should turn out to be correct. Corn v. Crosby Cattle Co., Tex. Com.App., 25 S.W.2d 290.

It is to be presumed that the jury in the instant case examined the original instrument which was tendered them and construed the argument of counsel in the light of what they themselves could read therein. Under the record presented the above contention cannot be sustained.

Appellant contends that there is a conflict in the evidence as to the amount of money received by appellant for royalty taken from tract No. 141 and that the court, in the absence of a finding by the jury was without authority to render judgment against appellant in any sum.

The court refused to submit to the jury appellant's requested issue as to what amount appellant had received from the oil and gas produced from said tract up to the date of the trial.

It was stipulated by the parties that royalty oil amounting to $5,023.11 was bought from appellant by Stanolind Crude Oil Producing Co. and that in addition thereto the further sum of $2,358.65 was held by said Company in suspense in the name of M. P. O'Meara. Appellant testified that it was his recollection that he had received $5,500, but that he could be mistaken in this figure and that an additional amount was being held in escrow to await the outcome of this suit.

Under the above record we think that the court erred in including in the amount awarded Sophia Williams and F. C. Williams the sum of $2,358.65 which is shown by said stipulation to be held by the Stanolind Crude Oil Producing Co., since this Company is not a party to this suit and is not bound by the judgment rendered herein. The judgment of the trial court will therefore be reformed in so far only as to reduce the amount awarded against appellant in favor of appellees Sophia Williams and F. C. Williams from the sum of $7,381.-76 to the sum of $5,023.11, the amount shown by said stipulation to have been actually received by appellant.

We have carefully considered each and all of the other propositions presented in appellant's brief. In our opinion none of them shows error in the record which requires a reversal of the judgment. It follows from these conclusions that the judgment of the trial court should be reformed so that it may provide that appellees, Sophia Williams and F. C. Williams, shall have and recover of and from the appellant, M. P. O'Meara, the sum of $5,023.11 instead of the sum of $7,381.76 awarded below, and that as thus reformed the judgment of the trial court should in all respects be affirmed. It is accordingly so ordered.

Reformed and affirmed.